IDA PEETERS, Appellant, v. EMMA SCHULTZ et al.

IDA PEETERS v. EMMA SCHULTZ et al.; WILLIAM SCHULTZ and WILLIAM SCHULTZ, Administrator of Estate of FREDERICK SCHULTZ, Appellants.

Division One, July 31, 1923.

1. **JUDGMENT: Allowance by Probate Court: Cancellation: Preclusive Legal Remedies.** A suit in equity is available to annul an allowance of the probate court alleged to have been obtained by fraud upon the court. The provision of the statute (Sec. 211, R. S. 1919) authorizing the filing of affidavits in the probate court within four months after such allowance is made, and the further provision of the statute (Sec. 283, R. S. 1919) permitting an appeal from such allowance, are not preclusive, and such suit in equity cannot be dismissed on the theory that such statutes afforded an adequate legal remedy.

2. ———: ———: **Cancellation for Fraud.** Fraud that will authorize a cancellation of the judgment of a court competent to render it, whether it be an allowance of the probate court or the decree of the circuit court, is not false allegations or false testimony, or even fraud in the cause of action itself, or any other defense clearly within the issues which it determined, but it must be fraud on the court arising out of extrinsic matters and which resulted in the procurement of the judgment.

3. ———: ———: ———: **Matter of Defense: Limitations: Fictitious Claim.** Allegations that the claims allowed by the probate court were wholly fictitious and that on their face they were barred by limitations, and other matters of pure defense, were foreclosed by the judgment of allowance and cannot be reopened and re-adjudicated by a suit in equity to cancel said judgment.

4. ———:* ———: ———: **Dual Attitude of Attorney: Acting for Claimant and Administrator.** Allegations in the petition to cancel an allowance by the probate court that the attorney for the administrator prepared and presented the fictitious claims and procured their allowance are answered by a specific finding of the chancellor exonerating the attorney from all fraudulent conduct in the matter, and by ample evidence refuting said allegations, and by substantial facts, known to the administrator and all the heirs, that the claim was just and had been acknowledged by decedent by a bill of sale and by deeds; executed and unexecuted, made by him in his life time, and that said attorney, upon being informed by the administrator, the claimant and the other heirs assembled in his office for the purpose of stating all the facts and of obtaining his legal opinion, informed them of the claimant's legal rights and the validity of her claim, whereupon he subsequently at her request prepared the claim, caused the heirs to be notified of its presentation to the court for allowance, and on the hearing the administrator and the heirs consented to its allowance, and it was allowed without any concealment of the facts from the court.

5. ———: ———: ———: **Existence of Deeds: Knowledge.** An heir who knew of the existence of deeds, executed and unexecuted, made by decedent in his life-time to a claimant against his estate and used in proving a claim allowed by the probate court, cannot urge them as a ground for the cancellation of said allowance in her suit in equity attacking it as fraudulent.

6. ———: ———: ———: **Defense to Claim for Money: Prior Deeds in Settlement: Voluntary Reconveyance.** Where the bachelor decedent executed deeds to his sister in settlement of money loaned and services rendered him, and afterwards she, at his request and without consideration, voluntarily re-conveyed to him, all of which was known to the plaintiff at the time said sister presented her claim to the probate court for an allowance for the amount of the money thus loaned and the services rendered, the contention that she should have asserted her rights to the land, although it be admitted that such contention would have been a good defense to such claim if it had been made in the probate court, is not for consideration in a suit in equity to cancel the allowance of said claim for fraud. It was not an allowance procured by fraud upon the court, or one arising out of extrinsic matter, but a mere defense to the claim, which the probate court had jurisdiction to allow, and any error in its allowance was foreclosed by the judgment.

Appeal from St. Louis County Circuit Court—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Wm. B. & Ford Thompson* and *Randolph Laughlin* for appellants.

(1) Real or sham, fair or fraudulent, genuine or concocted, the claims of Emma against Frederick were paid, and paid in full, by the transfer of all of Frederick's property to Emma on September 22, 1917, and the trial court so finds. (2) The fact of payment was one which the administrator could have put in issue had he known of its existence, and his want of knowledge of this fact, which made the demand fictitious and fraudulent, is not, alone and of itself, sufficient to impeach the judgment on his suit. Clyce v. Anderson, 49 Mo. 40; Howard v. Scott, 225 Mo. 715. (3) Instead of proceeding by way of bill in equity to establish a resulting trust against the land (which she had conveyed to Frederick pursuant to an unpatriotic and criminal conspiracy between her and him to enable him to claim exemption from military service), the claimant elected to revive her old paid claims, to conceal from the probate court the fact that they had been paid, and to file the same with an affidavit that they were correct and true, that she had given credit thereon for all payments, and that the balance of $9,837.50 claimed was justly due—a false affidavit which operated to deceive the administrator and the court, the former into making no investigation and the latter into assuming jurisdiction over the demand—a jurisdiction which, but for the affidavit, it never would have assumed or exercised. R. S. 1919, sec. 192; Williams v. Gerber, 75 Mo. App. 30; Bank v. Ward, 45 Mo. 311; Dorn v. Parsons, 56 Mo. 602; Bick v. Tanzey, 181 Mo. 524.

(4) The false affidavit to the claim was a step preliminary to the conferring of jurisdiction. That the instrument which set the court in motion involved none but intrinsic facts made it none the less a fraudulent device without which the court could not have acted. Through it the proceedings reached the hand of the court tainted with fraud. To thrust a thing so corrupt in its inception into court was fraud upon the administration of justice, and no judicial act innocently performed for its effectuation could serve to purge it of corruption. The case therefore possesses all of the elements for equitable action. Fitzpatrick v. Stevens, 114 Mo. App. 502; Wonderly v. Lafayette County, 150 Mo. 648; Howard v. Scott, 225 Mo. 685, 714; Wagoner v. Wagoner, 287 Mo. 588, 600; Clyce v. Anderson, 49 Mo. 40; Bresnehan v. Price, 57 Mo. 422; Lee v. Harmon, 84 Mo. App. 157; Link v. Link, 48 Mo. App. 349, 354; Chicago Railroad v. Callicotte, 267 Fed. (8 C. C. A.) 799, 809; Pickens v. Merriam, 242 Fed. 336; Nugent v. Railway Co., 46 N. Y. App. Div. 105; Graver v. Faurot, 64 Fed. 241, 76 Fed. 257, 162 U. S. 435; Greenleaf v. Maher, 2 Wash. C. C. 393, Fed. Cas. No. 5780; Moffat v. United States, 112 U. S. 24. (5) A judgment derives its force and dignity from the fact that it is the decision of a competent tribunal, before which both the parties have had a fair and equal opportunity of appearing, presenting their claims and defenses, and having them fairly adjudicated. Where this is prevented by any manner of fraud or circumvention, the judgment ceases to have its binding effect, and it is competent for the injured party to resort to equity for relief. Daniels v. Benedict, 50 Fed. 347; Graves v. Graves, 132 Iowa, 199. (6) Independent of the fraudulent affidavit the fact that the attorney was on both sides of the suit, and while assuming to represent the estate, yet connived at its defeat, and represented the other side, is sufficient ground, in and of itself, to impeach the judgment. United States v. Throckmorton, 98 U. S. 61; Pacific Co. v. Mo. Co., 111 U. S. 505; Haverty v. Haverty, 35 Kan. 438; Beck v.

Bellamy, 93 N. C. 129; Elting v. Bank, 173 Ill. 368; Link v. Link, 48 Mo. App. 345, 355; Black on Judgments, sec. 570. (7) Discovery of failure of consideration of a judgment after its rendition is ground for enjoining its enforcement, or setting it aside in equity. Walton v. Bonham, 24 Ala. 513; Wray's Admr. v. Furniss, 27 Ala. 471; Cox v. Jerman, 41 N. C. 526; Graham v. Tankersley, 15 Ala. 634; Gray v. Ward, 52 S. W. 1028; Taylor v. Railroad, 86 Tenn. 228; Jaynes v. Brock, 10 Gratt. (Va.) 211; Davis v. Millaudon, 14 La. Ann. 868; Poe v. Decker, 5 Ind. 150; Marshall v. Holmes, 141 U. S. 589; Ocean Ins. Co. v. Fields, 2 Story, 59 Fed Cas. No. 10406; Railway v. Smith, 91 Ark. 362; Roche v. Hoyt, 72 N. J. Eq. 945, 54 Am. St. 227.

*Joseph C. McAtee* for respondents.

(1) Emma Schultz, in all her conferences with the plaintiff and William Schultz, made no false statements to either of them as to the facts in regard to her claim and was guilty of no concealment of any fact or facts in regard to such claim, except that there was no statement or offer of evidence to the probate court of the execution of said deeds and bill of sale of September 22, 1917, or of the preparation of said unexecuted deed or the circumstances connected with said instruments. (2) Emma Schultz showed the deeds to Judge Lubke and related the circumstances of their execution on her first visit to him. (3) It is fundamental that fraud in the cause of action itself, or in false testimony, or fraud which was within the issue on the merits of the case in which the judgment was rendered, will not suffice to set the judgment aside. These are defenses which must be interposed in the case itself, unless their interposition is prevented by fraud on the part of the opposite party; and in such case it is primarily the latter fraud in the merits of the case, that is the real basis of equitable interposition. In other words the fraud must arise on extrinsic matters and must be in the procurement of the judgment.

Woodmen Acc. Co. v. Martin, 215 S. W. 777; Dous v. Lockett, 215 S. W. 769; Doud v. Ebbinghaus, 215 S. W. 771; Lieber v. Lieber, 239 Mo. 42; Cantwell v. Johnson, 236 Mo. 600; Vandeventer Trust Co. v. Stoneware Co., 197 Mo. App. 133; Hamilton v. McLean, 139 Mo. 685; Shelbina v. Hotel Assn., 58 Mo. 327; Covington v. Chamblin, 156 Mo. 587; Johnson v. Realty Co., 167 Mo. 359; Dorman v. Hall, 124 Mo. App. 9; Murphy v. DeFrance, 101 Mo. 157.   (4)   Respondent was not required to resort to an action in equity or for specific performance, but was warranted in proceeding against the administrator for the reasonable value of her services, no provision for payment having been made. Baldwin v. Lay, 226 S. W. 602.   (5)   No collusion of any kind was shown between Judge Lubke and respondent. He acted for the administrator and for respondent with William's knowledge and consent. His knowledge of the facts was his client's knowledge. Meier v. Blume, 80 Mo. 179; Keyser v. Hinkle, 127 Mo. App. 79. And if he failed to notify William (admitting for the purpose of the argument that the facts set forth would have precluded recovery) and this can be said to be negligence, then the neglect of the attorney is the neglect of the client and he takes the consequences as though he had been the actor. Welch v. Mastin, 98 Mo. App. 277; United States v. Throckmorton, 98 U. S. 61; Lieber v. Lieber, 239 Mo. 44.   (6)   William and Mrs. Peeters knew of the conveyance by Frederick to Emma and of the later conveyance by Emma to Frederick. They were accordingly put upon inquiry as to the consideration. If Emma's conduct was fraudulent it could have been the subject of judicial inquiry before the probate court. The principle upon which the rule is founded ignores the fact of the degree of care actually exerted by the defendant in making his defense. He may have been never so diligent but, if he permits a defense to escape him, he is as conclusively bound by the judgment as he would have been under conduct the most negligent. He must present his defenses in the time and manner allowed him and is estopped from saying

that he was deceived or misled by his opponent in anything pertaining to the merits. Being given his day in court, the presumption is conclusive that he is at fault if he fails to make everything out of his case that could be made. To borrow a term from another class of cases, his assumed negligence, not the fraud of his opponent, is the proximate cause of his misfortune. Fitzpatrick v. Stevens, 114 Mo. App. 500. (7) A notice is anything that would put a man upon his inquiry. Conn. Ins. Co. v. Smith, 117 Mo. 292; Sicher v. Rambousek, 193 Mo. 129; Evans v. Railroad, 82 Mo. App. 96; Natl. Bank of Com. v. Brunswick Tobacco Co., 155 Mo. 608; John Deere Plow Co. v. Sullivan, 158 Mo. 440; 20 Cyc. 481. (8) A party will not be aided, after a trial at law, unless he can impeach the justice of the verdict by facts, or on grounds of which he could not have availed himself, or was prevented from doing it by fraud of the opposite party, unmixed with fraud or negligence on his own part. Shelbina Hotel Assn. v. Parker, 58 Mo. 327. The administrator may waive the general Statute of Limitations and the special does not apply, as the claim was exhibited within one year. Carder v. Primm, 47 Mo. App. 306. However the account was running and continuous and the statute could not successfully be invoked. Bayle v. The Victory, 40 Mo. 244; Chadwick v. Chadwick, 115 Mo. 581.

GRAVES, P. J.—This is an action in equity to cancel a judgment of the Probate Court of St. Louis County, by which judgment Emma Schultz had an allowance made her of some $9,837 against the estate of Frederick Schultz, deceased. The plaintiff, Ida Peeters, and defendants Emma Schultz, and William Schultz were the surviving sisters and brother of the deceased, and were his sole heirs at law. The personal estate of deceased was nominal and inconsequential, but he was the owner (so far as the title record shows) of several small tracts of land, aggregating twenty-two acres or more, which land is of considerable value. William Schultz is the

administrator of the estate.   The petition charges. that
there was fraud in the procurement of the judgment at-
tacked in this action, and these assignments of fraud are
as follows:

"(1)    The said claims on the part of the defendant
Emma Schultz were each and both of them wholly ficti-
tious, and without any basis whatever in truth or justice.

"(2)    That said claims were each and both of them
barred on their face by the Statute of Limitations.

"(3)    That said claim for said money pretended
to have been loaned to deceased by said defendant Emma
Schultz was also barred on its face as against the Stat-
ute of Frauds.

"(4)    That the attorney who represented the estate
and the defendant William Schultz, and whose duty it was
to assert said defenses in behalf of said estate and in
behalf of the heirs and distributees thereof, was also the
attorney for the defendant Emma Schultz in the presen-
tation of said claims, and prepared said claims for her,
and procured their allowances for her from the Probate
Court of the County of St. Louis against said Frederick
Schultz's estate.

"(5)    That the conflict of interest between the
claim, or claims of said Emma Schultz and the adverse
interest of the estate of Frederick Schultz and of the
heirs and distributees thereof, disqualified the attorney
of the estate from acting in behalf of said defendant
Emma Schultz, and upon his election, to act in her behalf,
disqualified him from acting as representative of the ad-
verse interests of the estate and its distributees, includ-
ing this plaintiff; that the action of said attorney in ap-
pearing on both sides of the case constituted and was a
fraud upon the court, and on the rights of this plaintiff,
as well as a fraud upon the estate itself, and entitles
plaintiff to have said judgment set aside, to the end that
the just and valid defenses existing against said claims
may be presented.

"(6)    That plaintiff at all times relied on her broth-
er, the defendant William Schultz, in his capacity as ad-

ministrator of her deceased brother Frederick's estate, not to sacrifice her interest in said estate in behalf of the defendant Emma Schultz, and to do all things necessary and proper to protect said interest against all improper and fraudulent results, and through such reliance she relied on the attorney of said estate in the same manner and to the same extent; that said attorney kept her in ignorance of her rights in the premises, both as to matters of fact and matters of law; and said claim was allowed and became a judgment without her being present in court; and without her having any opportunity to appear and defend against the same.

"(7)    That said claims were allowed during the May term, 1920, of the Probate Court of St. Louis County; that said term has long since lapsed and the time for taking an appeal therefrom has long since expired; that plaintiff did not learn of the fraud perpetrated, as aforesaid, nor of her rights in the premises, until long after the lapse of said term, and until the opportunity to take an appeal had become extinct.

"(8)    That the claims so allowed in favor of the defendant Emma Schultz and against the estate of Frederick Schultz are large enough to absorb the whole of said estate, and the whole interest of this plaintiff therein, and unless plaintiff is relieved by the decree of this Honorable Court, she will be defrauded of the whole of her interest in her deceased brother Frederick's estate; that plaintiff believes that her brother William was innocent of any intentional wrongdoing in the premises, and that the wrong was perpetrated solely by virtue of the fraud and covin of the defendant Emma Schultz and her attorney, who was also attorney of record for the estate; but if the court holds that, notwithstanding such adverse interest, said attorney was in law the agent of the defendant William Schultz, so as to make the defendant William Schultz, in his capacity as administrator, liable as principal for the acts of the attorney, then, and in that case, plaintiff alleges that there was a conspiracy between the defendants Emma Schultz and

William Schultz, as administrator of Frederick Schultz, acting by and through the attorney of said Frederick Schultz's estate, to perpetuate and consummate said fraud.''

William Schultz, for himself and as administrator of the estate of Frederick Schultz, admitted and adopted as their answer all the allegations of the plaintiff's petition, save and except he denied ''that there was any conspiracy whatever between the defendant Emma Schultz and William Schultz as administrator of Frederick Schultz, but on the contrary allege the facts to be that these defendants (William Schultz and William Schultz, administrator) were victims of the same fraud of which plaintiff complains, as much as was the plaintiff herself.''

Defendant Emma Schultz, after admitting her judgment in the sum of $9,837, and denying generally all other allegations of the petition, thus proceeds in her answer:

''Further answering, this defendant states that the said claim was, and is, a just and meritorious one, and that the amounts in said claim constituted and represented money had and received by Frederick Schultz from this defendant, and the interest thereof from the date of the receipt of same by said Frederick Schultz, and the reasonable value of service rendered by this defendant to Frederick Schultz for a period of nineteen years, at twenty-five dollars per month.

''Further answering, defendant states that the plaintiff herein is her sister, and that defendant, William Schultz, is her brother; that both plaintiff and said defendant, William Schultz, knew at the time her said demand was exhibited against said estate that it would be presented to the probate court for allowance, that it was a just and meritorious one for money had and received by Frederick Schultz from this defendant, and for services rendered said Frederick Schultz by this defendant; that at said time they concurred in and agreed that said demand should be allowed and represented to the judge of the probate court that said claim was a

just and meritorious one; that said representations were made by defendant, William Schultz, in person, and by plaintiff through a letter produced to said judge of the probate court, and that by reason of the acts of plaintiff and defendant William Schultz, administrator of the estate of Frederick Schultz, deceased, they are now, and should be, estopped from maintaining this action, the plaintiff from prosecuting her petition, and defendant William Schultz from asking to be joined as a party plaintiff with said Ida Peeters, and from joining with her in the allegations made in her petition, and prays the court to so declare.

"Wherefore, having fully answered, this defendant asks to be dismissed hence with her costs."

Plaintiff by way of reply denied the allegations in the answer of Emma Schultz, and defendant Emma Schultz replied by general denial to the answer of William Schultz and William Schultz, administrator. Thus were the issues made.

Upon trial the court after making a finding of facts as to the particular facts involved, entered a decree in accordance with his last finding, which reads:

"The court further finds that there is no equity in plaintiff's bill; that she had an adequate remedy at law by appeal and had a remedy at law by filing a motion in the probate court for the vacation of said allowance, if same was improper, and that the petition of plaintiff should be dismissed, and also the petition of William Schultz should be dismissed, and the costs herein should be assessed against plaintiff, Ida Peeters, and defendant William Schultz."

Cross appeals were taken herein and the same are the subject-matters of this case. Two short transcripts were filed, but the cases were consolidated and are presented here upon a single abstract of record. Details are left to the opinion.

I. The chancellor, *nisi*, after first finding that there was no equity in plaintiff's bill or petition, further finds,

as shown by the finding of fact last above quoted in our statement of this case, that plaintiff had adequate remedies at law "by appeal and  .  .  .  ` by filing a motion in the probate court for vacation of said allowance." Following this suggestion ·of the trial court, respondent now urges that by virtue of Revised Statutes 1919, sections 211 and 283, the plaintiff had ample legal remedies, and· therefore her bill in equity was properly dismissed. In Walther v. Null, 233 Mo. l. c. 113, LAMM, J., thus tersely outlines the provisions of Section 220, Revised Statutes 1909¡ (now Section 211, R. S. 1919) and says in effect: "If any executor, administrator, heir or creditor of an estate shall, within four months after any demand shall have been allowed, file in the office of the probate court the affidavit of himself or some credible person, stating that the affiant has good reason to believe, and does believe, that such demand has been improperly allowed, and shall furnish satisfactory evidence of that fact to the court, and further, that notice has been given the opposite party or parties in interest, the court shall vacate such order of allowance and try the matter anew, and allow or reject such demand, as shall be right; and if, upon such new hearing, such demand shall be allowed, it shall be classed and paid as if such new hearing had not been' granted."

*Legal Remedies.*

Section 283, supra, is the statute fixing the time within which appeals from the probate court may be allowed and granted. There is no substance in this contention of the respondent, nor in the  finding of the chancellor, *nisi*, to the effect that there were ample ·remedies at law, which precluded the proceeding in equity. In the Walther Case, supra, it is said:

"But whether the time had run or not, defendant had still left another arrow in his quiver, a suit in equity , to annul the judgment. [Fitzpatrick v. Stevens, 114 Mo. App. 497.] These statutory remedies, absent preclusive words, do not oust the ancient jurisdiction of courts of chancery. [Arnett v. Williams, 226 Mo. l. c. 118, et seq.]"

Judge LAMM was discussing our present statute i. e. Section 211, Revised Statutes 1919, because it is identical with the one then in force, which was Section 220, Revised Statutes 1909. An individual, whose rights are harmed by a judgment fraudulently procured, can always go into equity, and attack such judgment.

The statutory proceedings do not cut off the right to proceed in equity, but is but additional remedies. There is no substance in this contention of respondent.

II. The plaintiff having the right to proceed in equity to have the judgment of the probate court annulled for fraud, if there was pleaded and shown such fraud as would authorize cancellation, we are forced to the merits of the case. By the merits we mean (1) whether or not the petition charges such fraud as would authorize the setting aside of the judgment, and (2) if the petition alleged such character of fraud, have the allegations been proved. Of first importance is, what fraud will authorize the cancellation of a duly entered judgment? This question has often been reviewed by this and the other appellate courts of the State.

Fraud.

In Woodmen Accident Co. v. Martin, 215 S. W. l. c. 777, TRIMBLE, J., aptly words the rule thus:

"With reference to this vital question of whether, under the facts shown in evidence, equity will authorize the setting aside of the judgment, it must be remembered that such power can be exercised only within certain well-defined limits. The stability of final judgments is of too great importance to society in general, and too valuable in the administration of justice itself, to permit them to be lightly set aside or disturbed. For this reason, it is not every fraud that will vitiate a judgment. Fraud in the cause of action itself, or in false testimony, or fraud which was within the issues on the merits of the case in which the judgment was rendered will not suffice. These are defenses which must be interposed in the case itself, unless their interposition is prevented by fraud on the part of the opposite party; and in such

case it is primarily the latter fraud, and not the fraud in the merits of the case, that is the real basis of equitable interposition. In other words, the fraud must arise on extrinsic matters and must be, as the courts have often expressed it, in the procurement of the judgment. [Cantwell v. Johnson, 236 Mo. 575, 601, 139 S. W. 365; Wabash Ry. Co. v. Mirrielees, 182 Mo. 126, 81 S. W. 437; Howard v. Scott, 225 Mo. 685, 125 S. W. 1158; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Hamilton v. McLean, 139 Mo. 678, 687, 41 S. W. 224; Murphy v. De-France, 101 Mo. 151, 157, 13 S. W. 756; Lieber v. Lieber, 239 Mo. 1, 143 S. W. 458; Story's Equity Juris., sec. 1582; 16 Am. & Eng. Ency. of Law, 380; Bates v. Hamilton, 144 Mo. 1, 11, 45 S. W. 641, 66 Am. St. Rep. 407; Dorman v. Hall, 124 Mo. App. 5, 9, 101 S. W. 161.]''

LAMM, J., in Howard v. Scott, 225 Mo. l. c. 712, says:

''Broadly speaking, it may be said that false evidence or a lying allegation in a petition is not sufficient to overturn a judgment after the term by a direct proceeding in equity; the idea being that there should be an end to a lawsuit, that every man should have his day in court—not two days—that for the general welfare of society litigants might better be held to take their chances of false swearing on the stand and false allegations in pleadings rather than allow the re-agitation of matters once passed into the category of things adjudicated; for if equity on such ground vacates a judgment by a new one; why not overturn the latter by a new suit and so on without end. So that it is frequently laid down that fraud which will overturn a judgment *must arise on extrinsic and collateral matters and not on the very issues presented by the pleadings and passed upon at the trial.*''

The italics in the foregoing are ours. In the early case of Payne v. O'Shea, 84 Mo. l. c. 133, it is said:

''In this State a proceeding in the nature of a bill in equity will lie to enjoin and avoid a domestic judgment obtained through fraud, and like remedies exist

and may be resorted to against judgments obtained in other States, when sued on in this State. [Freeman on Judg., sec. 561; High on Inj. (2 Ed.) sec. 69.] The fraud, however, for which a judgment will be enjoined must be in the procurement of the judgment. And courts of equity will not vacate or enjoin a judgment merely based upon a cause of action which may be vitiated by fraud, for this is a valid and meritorious defense, which may be interposed, and unless its interposition is prevented by fraud of an adversary, as was the case in Ward v. Quinlivin, 57 Mo. 426, it cannot be asserted against a judgment, either foreign or domestic."

BLACK, J., in Murphy v. DeFrance, 101 Mo. l. c. 157, says:

"A judgment procured by fraud may, of course, be set aside in equity, but the fraud because of which such relief is granted is one in procuring the judgment. As has been said by this court: 'Courts of equity will not vacate or enjoin a judgment merely based upon a cause of action which may be vitiated by fraud, for this is a valid and meritorious defense, which may be interposed, and unless its interposition is prevented by fraud of an adversary, . . . it cannot be asserted against a judgment, either foreign or domestic.' [Payne v. O'Shea, 84 Mo. 130.] 'The fraud,' says Freeman, 'for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action be vitiated by fraud, this is a defense which must be interposed, and unless its interposition be prevented by fraud, it cannot be asserted against the judgment.' [Freeman on Judg. (3 Ed.) sec. 489.] Courts of equity do not grant such relief for the purpose of giving a defeated party a second opportunity to be heard on the merits of his defense; and the relief is confined to those cases where the judgment is procured by fraud or through excusable mistake or unavoidable accident. [Freeman, Judgments, sec. 486.]"

To like effect is Cantwell v. Johnson, 236 Mo. l. c. 600, whereat it is said:

"In the affairs of men there is no place under the sun where fraud should be permitted to take sanctuary and claim immunity from pursuit, discovery and punishment. The solemn judgments of courts of justice of any degree afford it no sanctuary. But courts have a wise and natural aversion to overthrowing judgments. There must be an end to litigation in the interest of the State and for the repose of society; therefore when the help of a court of equity is asked to undo what has already been done and adjudged by a court, fraud in the cause of action itself, in false allegations or false testimony, will not suffice. Such fraud was within the issues on the merits. The complainant had his day in court and the question is foreclosed. So, where fraud, accident, surprise or mistake is the ground for equitable relief against a judgment, plaintiff must come into court with a cause unmixed with his own negligence or fault; for 'no man is entitled to the aid of a court of equity, when that aid becomes necessary by his own fault'. So, fraud entitling him to relief must be fraud arising on extrinsic matter whereby he or the court was tricked, and the court was made an instrument of injustice. So, when he claims it to be against conscience to execute a judgment, the injured party must clearly prove either that he could not have availed himself of his defense in a court of law, or that he might have availed himself of it but was prevented by fraud or accident unmixed with his own fault or negligence. The fraud for which a judgment may be vacated or enjoined must be in its 'procurement' in its 'concoction', in the 'very act' itself. Judgments are impeachable only for fraud 'extrinsic to the merits of the case'. 'They are not impeachable for fraud relating to the merits between the parties'. All such 'mistakes and errors must be corrected from within by a motion for a new trial, or to reopen the judgment, or by appeal'. The foregoing propositions announce settled doctrine."

All the cases and texts are reviewed by WOODSON, J., in Lieber v. Lieber, 239 Mo. l. c. 28 et seq. With the rule of law thus firmly fixed we shall measure both petition

and evidence by said rule in the paragraphs to follow.

III. The petition avers "that there was and is fraud in the procurement of said judgment; and in the judgment itself, in the following particulars."

Following this statement eight matters are pleaded, as we have fully set out in our statement. The first three of these charges must drop out under the rule of law discussed in the paragraph last above. Each of these matters were purely matters of defense in the action before the probate court. They are not for consideration in the present action. Defendants practically concede this, and it might be said that such statements in the petition were mere matters of inducement, and were to give life to charges 4 and 5, by which fraud is charged upon the part of Judge Lubke, who prepared the claim for plaintiff after investigation of the facts and consultation with the parties. The trial court specifically exonerated Judge Lubke from any and all alleged fraudulent conduct, and this finding accords with the long and honorable career of Judge Lubke in the courts of this State, including this court. No lawyer was better or more favorably known to both bench and bar than he. However, some facts should be stated at this point.

*Dual Capacity of Attorney.*

A part of the land standing in the name of Frederick Schultz at the time of his death belonged to the parents of Frederick Schultz and the plaintiff and defendants herein. When that estate (the father's estate) was divided, the girls got some $4400 in cash. Emma received such a sum. The boys, Frederick and William, got land. For some four years after their mother's death (she dying some time after her husband) all the Schultz children resided at the old home as a family, and each left at time of marriage, until finally there were remaining at the old home only Frederick and Emma. This was in March, 1901. From that time to the date of Frederick's death Emma Schultz remained with deceased, Frederick, performing the services of housekeeper, cook, and assistant upon the farm, which included a small dairy. During

the last six or seven years of his life Frederick was in poor health, and the burden of Emma of necessity was much heavier. These services were performed under the promise that he, Frederick, "would make it good with her." This service is the basis of a portion of the allowed claim. The basis of the other part of the claim was an alleged loan of $3,000 to Frederick in 1913. Of this, and the other matters, the trial court found as follows:

"While the said Emma Schultz remained at home upon her brother Frederick's farm, busy with the work thereon, he attended to the business of investing his money and a considerable part of her money in deeds of trust, obtained through Messrs. Cornet & Zeibig, real estate agents in St. Louis, which were held and carried upon the books of that firm in his name, and not in the name of the said Emma.

"Included with the money so loaned in the name of the said Frederick Schultz was the sum of three thousand dollars, which belonged to the said Emma Schultz. And the said Frederick Schultz, withdrawing the said sum from a loan of five thousand dollars standing in his name with said firm of Cornet & Zeibig, on the ninth day of June, 1913, purchased therewith a parcel of about five and one-half acres of land adjoining his said homestead from Lloyd L. Adams and Chilton Atkinson and took the deed therefor and held the legal title thereto in his own name.

"On September 22, 1917, the said Frederick Schultz executed and delivered to the said Emma Schultz two deeds, thereby conveying to her all of the said land owned by him, including said homestead and the said parcel acquired in his name in 1913, and also a bill of sale of personal property, thereby conveying to her his two work horses, eleven head of cattle, farm wagons, mowing machine, rake and other farm implements, and all household and kitchen furniture and hay and grain at his said home and farm. Each of said instruments mentioned a consideration of $10, which was merely nominal and was not paid. At the time of executing said deeds

and bill of sale the said Frederick Schultz was in bad
health and wished to avoid proceedings in court in case
of his death and also estimated that he was indebted to
the said Emma for the said $3,000 of her money used by
him in purchase of property in his name as aforesaid
and her said services to him in his home and upon his
farm until that time, in the amount of the value of said
lands and personal property so conveyed to her by his
said deeds and bill of sale; and being induced thereby
and in consideration of such money and services, and for
the purpose of paying his said indebtedness to her, he
executed and delivered to her the said two deeds and bill
of sale, and she accepted the same as such payment.  The
real estate conveyed by said two deeds was then and
still is of the value of $9,000 to $10,000, and the personal
property conveyed by said bill of sale was of consider-
able value, the amount of which is not shown.

"In the year 1918, in or before the first week of No-
vember, the said Frederick Schultz, being of the age of
about 44 years and under 45 years, was called upon under
the selective service law of the United States to make
answers to a questionnaire as to his qualifications for
military service and his claim of exemptions therefrom
under said law, and in making such answers before a
local board in St. Louis County he claimed exemption
from the selective draft on account of being engaged in
the industry of agriculture upon his own farm.  Shortly
thereafter, on the same day, it occurred to his mind that
said statement was not true, by reason of the fact that
the farm occupied by him had been conveyed as afore-
said to the said Emma Schultz; and in order to correct
said statement he at once requested her to reconvey to
him the said lands conveyed by him to her as aforesaid
on the twenty-second day of September, 1917, and she
upon said request and for the purpose of vesting the title
to the same in him, in order that the said statement might
be made to be true and correct, and without other con-
sideration, executed and delivered her deed by which she
re-conveyed to him the said lands.

"Thereafter the said Frederick Schultz acknowledged that the said lands rightly belonged to the said Emma Schultz; and he intended to convey the same to her and caused a deed to be prepared, dated February 12, 1920, ready to be executed and acknowledged and delivered by him to re-convey the same, two or three days before his death, and arranged for the summoning of a notary public to his residence to take his acknowledgment thereof; but within two days thereafter he became unconscious and so remained until the time of his death, and by reason thereof he was unable to sign or acknowledge said deed.

"Upon the death of said Frederick Schultz the plaintiff and the defendants Emma and William Schultz held a conference at the late residence of said deceased, in which the said Emma mentioned to both of the others the said unexecuted deed dated February 12, 1920, and her claim of $3,000, for money which she had loaned to the deceased and her wages for her services to him at his home and on his farm. A few days thereafter, upon recommendation of Mr. Zeibig, of said firm of Cornet & Zeibig, they together consulted with one George W. Lubke, formerly a judge of the St. Louis Circuit Court, as attorney at law, who advised them as to proceedings in administration of the estate of said deceased, and after the said William was appointed administrator assisted in the preparation and filing of the inventory thereof, and was consulted by the said administrator and by the other parties hereto from time to time in the matter of said administration and of said claim of the defendant Emma Schultz.

"In March, 1920, the plaintiff and said William Schultz consulted said Lubke with reference to the said claim of Emma Schultz for wages for her services and were advised by him that if she had worked for her brother until his death she would be entitled to wages. Thereafter on April 27, 1920, the said Emma Schultz consulted with said Lubke as to her said claim, and at his request she brought the said administrator to the

office of said Lubke, on the fifth or on the seventh day
of May, 1920, and the said Lubke then prepared the
said claim in their presence and upon information fur-
nished by them and probably upon information obtained
from some other source as to the date and other details
of the receipt and use by Frederick Schultz of the sum
of $3,000, mentioned in said claim, although the evidence
fails to show what was such source of information. Said
claim was drawn up by said Lubke for and at the request
of said Emma Schultz and she paid him a fee of ten dol-
lars for his service in preparing the same. The claim
was at said time sworn to by the said Emma Schultz be-
fore Karl E. Lubke, a notary public in said office, who
then subscribed the jurat as the same is subscribed in
said claim. At the same time the said William Schultz
was instructed by said Judge Lubke to notify the plain-
tiff that said claim would be presented to the said pro-
bate court for allowance on May 10, 1920, and to request
her to be present in said court on that day. Said Wil-
liam Schultz did so notify and request the plaintiff, but
instead of attending said court she sent by the said
William a letter to be used in said court at the hearing
of said claim, which is in words and figures as follows:

"Wellston, Mo. May 9, 1920.
"Dear Sir:—
    "I was notified to appear in court in regard to the claim
of Emma Schultz; I am satisfied with the court's decision;
I will not appear.
"IDA PEETERS.

"On May 10, 1920, said claim was presented to said
probate court by the said Lubke as attorney for said
Emma Schultz, and she and the defendant William
Schultz testified in said court as witnesses to the effect
that the claim was just and that there was no objection
thereto, and the said letter of plaintiff was produced
and exhibited to said court, and thereupon said claim was
allowed by the said court as aforesaid.
    "In the said consultations with Judge Lubke he
advised all of the parties hereto with reference to said

claim of Emma Schultz. He was informed by her of the said conveyances by deed and bill of sale between Frederick and Emma Schultz and of the said unexecuted deed and of the circumstances connected with the execution and preparation of said instruments, although he has no recollection thereof now. The credit of $50 for a cow purchased by the deceased March 14, 1918, in said claim was mentioned to Judge Lubke by said William Schultz. The only questions discussed by the said parties, or any of them, with Judge Lubke, were as to the effect of the Statute of Limitations and as to the reasonableness of the claim of wages at $25 per month. As to the reasonableness of such wages said William had expressed to the plaintiff some doubt. No opposition was expressed to the claim on the ground that it was not justly due, either to Judge Lubke or to the probate court.

"In all said consultations and transactions Judge Lubke advised and represented the said parties together and severally, as aforesaid, with full knowledge by each and all of them that he was so advising and representing them, and without his having any information or reason to believe that the allowance of said claim was objectionable to or controverted by any of said parties. And so in good faith he stated to the probate court at the time of the allowance that it was by consent of all parties. The said conveyances between Emma and Frederick Schultz and said unexecuted deed and the circumstances connected with said instruments and deed were not mentioned in the probate court on the hearing of said claim.

"The said William Schultz and the plaintiff knew of the said services by Emma Schultz to Frederick Schultz, and in a general way of how the said Frederick and Emma were living and working together; knew of the said conveyances between Frederick and Emma at about the times when they were executed and of the said unexecuted deed in a few days after the death of said Frederick Schultz; and knew of the said allowance of the tenth of May, 1920, on that day. They had no

knowledge until after that time that the moneys of said Emma were kept in the account and name of said Frederick Schultz. They believed that the claim so allowed to Emma Schultz was a just one. And the plaintiff trusted to and relied upon the defendant William Schultz as administrator to do what was just and proper with reference to said claim and both of them relied upon the advice of Judge Lubke in regard to the same.

"The said Emma Schultz in all her conferences with the plaintiff and said William Schultz made no false statements to either of them, as to the facts in regard to her said claim and was guilty of no concealment of any of said facts, and the said Judge Lubke made no false statements and was guilty of no concealment of any fact or facts in regard to such claim, except that there was no statement or offer of evidence to the probate court of the execution of said deeds and bill of sale of September 22, 1917, or the preparation of said unexecuted deed or the circumstances connected with said instruments."

The foregoing findings by the court have substantial support in the evidence. That Emma was to be paid for her services seems to have been thoroughly recognized. From these facts flowed the exoneration of Judge Lubke from the charge of fraudulent conduct in the allowance of this claim. So that even if it be said that charges 4 and 5 in the petition are sufficient charges of fraud in the very procurement of the judgment, yet they are refuted by the facts. The administrator was present when Judge Lubke prepared the claim. He waived service, and at the suggestion of Judge Lubke wrote the plaintiff that the claim would be presented. Her answer to the notice appears in the trial court's finding, supra. It is clear that Judge Lubke acted as he did with the knowledge of all parties. Mrs. Peeters knew of the deeds, mentioned in the court's findings, (both executed and unexecuted) and cannot now urge them in this case. [Fitzpatrick v. Stevens, 114 Mo. App. l. c. 500.]

IV. The sixth ground for relief pleaded in the petition charges fraud upon the part of the administrator,

and the withholding of facts by Judge Lubke, his attorney. This is not sustained by the record. The evidence shows that Mrs. Peeters knew of the two claims of Emma Schultz, her sister. She learned of the $3,000 claim just after the brother's death, and was present (according to William Schultz) in Judge Lubke's office when the claim of wages was discussed some time before May 7th, when the claim was prepared, and was notified that the claim would be presented and then wrote the letter of May 9th set out above.

*Concealment.*

It is urged that the deeds to Emma from Frederick (one to the real estate and the other to the personal property) were in full settlement of Emma's claim. We need not go into the divers angles of this controversy, and the points made to the effect that Emma should have asserted her rights as to the land. This, because, if these deeds were in settlement of the claims of Emma for money loaned and services, such was a good defense as to the cause of action in the probate court, and a defense known to Mrs. Peeters long before the judgment in the probate court. It is not a matter for consideration in this, an action in equity to cancel that judgment. [See Woodmen Accident Co. v. Martin, 215 S. W. l. c. 777, and other cases cited, supra.] The fraud which will authorize a court of equity to set aside a solemn judgment must arise from extrinsic matters, and must be one practiced in the procurement of the judgment. Fraud in the cause of action itself, or false testimony, or fraud which was within the issues on the merits of the case in which the judgment was entered, are not frauds to be considered in an action, such as we have before us. All such matters are closed by the judgment, unless it be shown that a defense was precluded by some extrinsic act of fraud. Of the latter class of frauds none appear in this case.

*Deeds in Settlement.*

What we have said, supra, disposes of the 7th and 8th grounds of the petition. Even in equity we must adhere to the petition as to the grounds for the relief prayed.

Having fully covered the grounds upon which equity was invoked, and finding that there was a failure to make a case, either by plaintiff, or by William Schultz, personally, or by William Schultz, Administrator, it follows that the decree of the learned chancellor, who tried this case should be affirmed. It is so ordered. All concur.