Alois J. RATERMANN and Edward E. Ratermann, Individually and as Executors of the Estates of Al Ratermann and Theresa Ratermann, et al., Plaintiffs-Respondents,

v.

George RATERMANN et al., Defendants-Respondents,

Robert E. Ratermann, Defendant-Appellant.

No. 55281.

Supreme Court of Missouri, Division No. 2.

Sept. 11, 1972.

Motion for Rehearing or to Transfer to Court En Banc Denied
Oct. 9, 1972.

Forrest M. Henıker, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, for plaintiffs-respondents.

Albert L. Rendlen, Rendlen & Rendlen, Hannibal, for defendant-appellant.

HENLEY, Judge.

This is an appeal from an order and judgment striking from the files appellant's motion, filed September 8, 1969, which sought to set aside a consent decree entered June 11, 1965, in a suit in equity.

Appellant's notice of appeal filed December 18, 1969, purports to effect an appeal from both the consent decree entered June 11, 1965, and the above referred to judgment striking appellant's motion from the files. Respondents have moved to dismiss the appeal from the consent decree on the grounds (1) that the notice was not timely filed, and (2) appellant waived his right to appeal from the consent decree, as shown by that decree. The motion is sustained and the appeal from

the June, 1965 consent decree only is dismissed. Civil Rule 81.04, V.A.M.R.

Respondents, Alois J. Ratermann, Edward E. Ratermann, Marcella Ratermann Sheridan and Mary Ratermann Mollerus, and the appellant, Robert E. Ratermann, are brothers and sisters and children of Al and Theresa Ratermann who died in 1957 and 1958, respectively. For convenience and clarity we will refer to respondents as plaintiffs and the defendant-appellant, Robert E. Ratermann, as movant.

This protracted litigation, of which this appeal is the latest, began in 1959, and involved several classes of action,[1] including nine suits in equity involving, primarily, the ownership of shares of the capital stock of Ratermann Realty & Investment Company, a corporation (hereinafter referred to as Ratermann Realty), the owner of valuable real estate. In July, 1963, these actions were consolidated into one suit in equity. On November 12, 1962, before consolidation, plaintiffs, movant, and another brother (Lambert) entered into an agreement, known as the "Family Settlement Agreement", for the adjustment of differences between them. The substance of this agreement, insofar as pertinent here, is that in consideration of his agreement to dismiss certain will contests and other actions, movant was (1) given an option to purchase for $26,000 an apartment building (known as the Alamo property) belonging to the estates, and (2) to pay his brothers, Alois and Edward, in excess of $12,700 for which they agreed to transfer to him a one-fifth interest in certain shares of the stock of Ratermann Realty held in the name of others, but which they claimed to own and sought to recover in the pending litigation.

In the process of consolidation of the suits movant was, for the first time, made a party defendant in this litigation.[2] He filed,[3] pro se, an answer, a counterclaim and a cross-claim in which he alleged, inter alia: (1) that plaintiffs had breached the Family Settlement Agreement by refusing to complete the transaction for his purchase of the Alamo property; (2) that he was entitled to a one-fifth interest in the stock of Ratermann Realty owned by his deceased parents or their estates as well as a one-fifth interest in the shares which Alois and Edward claimed to own and sought to recover from other defendants; and (3) that he was entitled to an accounting by plaintiffs for all assets in their hands, a liquidation of all assets of Ratermann Realty, damages of $250,000 in lieu of accounting for breach of the Family Settlement Agreement, and a determination of the title to all shares of stock in Ratermann Realty and its assets.

The consolidated suit was set for hearing and trial commenced January 26, 1965. Plaintiffs completed their evidence that day. Movant represented himself and began introduction of evidence in support of his answer, counterclaim and cross-claim. The proceedings at which this evidence was introduced, accompanied by frequent objections and bitter argument, continued through January 27 and 28, and February 10 and 11.

On February 12, 1965, the hearing was continued until March 29, 1965, when it was shown that movant was being treated by Dr. Murray Finn, a psychiatrist. On March 29, Ellis Gregory, a lawyer and office associate of movant, appeared in his behalf and moved for a continuance for six months. The motion was accompanied by an affidavit by Dr. Finn stating that

---

1. A general description of the four classes or types of action and of the several suits in one of those classes may be found in Ratermann et al. v. Ratermann Realty & Investment Company et al., Mo.App., 341 S.W.2d 280, 284–285.

2. He previously had sought but was denied leave to intervene as a party. See Ratermann et al. v. Ratermann Realty & Investment Company et al., Mo.App., 341 S.W.2d 280.

3. A member of the Missouri Bar practicing in St. Louis.

movant was not psychotic and not incompetent, but that further tension and pressure from the trial might result in severe damage to his general health. The case was continued and reset for April 20.

On April 20, 1965, Mrs. Helen Ratermann appeared and informed the court that her husband had entered a hospital the night before and was still under the care of Dr. Finn. Counsel for plaintiffs stated they would not resist a continuance, but would like to inquire into the question of whether a guardian ad litem should be appointed. Dr. Finn was examined on this question and testified that movant's condition could be described as "obsessed, compulsive personality * * * This indicates a life-long history of anxiety, tension, and a tendency towards obsessive thinking." As to movant's present health status, Dr. Finn further testified:

"Q Is it your opinion that his emotional health at this time is such that he could effectively consider settlement now?

"A I feel it could be discussed at this point. I have all along said that he is mentally competent, as far as making decisions, I certainly think it could be discussed and see what happens.

"Q You think there could be such a discussion, without immediate danger to his emotional and physical health?

"A I would say so."

After this testimony, the court reset the case for September 13, for continuation of the trial, and set a hearing for August 2 to determine whether or not a guardian ad litem should be appointed.

Thereafter settlement negotiations were begun, all parties to the suit were able to reach a compromise of their differences, and the case was settled. The terms of the settlement were reduced to writing and put in the form of a consent decree to which was attached an "approval" bearing the signatures of movant, his counsel, and counsel for all other parties.

On June 11, 1965, counsel for plaintiffs, counsel for movant and counsel for all other parties appeared in open court and presented the decree to the trial judge for approval and entry. After the court inquired into the matter of movant's satisfaction with and understanding of the decree, it was approved by the court and entered of record.

On September 8, 1969, the motion to set aside the consent decree was filed by movant and his wife.[4] The motion alleges, inter alia, that movant received electric shock therapy while hospitalized from ·April to July, 1965; that plaintiffs failed to tell movant they had been offered not less than $1,000,000 for real estate of Ratermann Realty; and that "[t]hough Movants greatly regret having to state it as their opinion, to them it appears quite evi: dent, based upon the whole record herein that Plaintiffs aided and abetted [sic] by their Counsel have connived at purloining what long ago should have been their fair portion of participation in their parents estates * * *; that Plaintiffs aided and abetted [sic] by their Counsel took great and unfair advantage of a distress situation to profit for themselves without regard to consequence; that Plaintiffs aided and abetted [sic] by their Counsel perpetrated a fraud upon this Court." This motion was served upon the individual plaintiffs and the corporate defendant by delivery by registered mail to their counsel. Plaintiffs, their counsel, and defendant, Ratermann Realty, appearing specially for the limited purpose of their separate motions, moved to strike the motion to set aside the consent decree on the grounds (1) that the June 11, 1965, decree was final and the court was without jurisdiction to entertain the motion or take any action thereon; (2) that Ratermann Realty had been dissolved shortly after the consent decree; and (3) that the purported

4. Mrs. Ratermann was not a party, but was a stranger to the suit in which the motion was filed.

service by mail on counsel for plaintiffs and the corporate defendant was void and the court was without jurisdiction of the subject matter and the person of the individuals so served. As indicated, the motions to strike were sustained and movant's motion stricken. In a memorandum filed with its order striking the motion, the court stated that the consent decree was a final judgment and that the court was without jurisdiction to set it aside based upon a motion filed more than four years later. In this connection the court referred to Civil Rule 75.01 which provides that a trial court's control over and power to vacate its judgments expires thirty days after judgment; Civil Rule 74.32 which provides that judgments of a court of record shall not be set aside for irregularity, on motion, unless the motion is made within three years after the judgment; Civil Rule 73.01(c) requiring after trial motions to amend judgment be filed within fifteen days after judgment; Civil Rule 53.01 requiring that actions be instituted by the filing of a petition and the issuance of summons. The court also held that it was without jurisdiction of the parties.

Movant contends that the court erred in striking his motion because the motion is in the nature of a petition for a writ of error coram nobis, a remedy for setting aside a final judgment on the ground of duress or fraud in its procurement, which remedy, he says, is not limited or barred by the lapse of time. Movant further contends that the facts stated in his motion must, for the purposes of this appeal, be considered to be true, and, so considered, are sufficient to demonstrate not only that he is entitled to relief, but also that the motion is the proper remedy rather than a separate suit in equity. Plaintiffs, on the other hand, contend not only that a separate suit in equity is his only remedy (if he has one) and that, for that reason, the motion will not lie, but also that movant has failed to allege facts sufficient to state a claim for relief either by way of a writ of error coram nobis or a separate suit in equity.

■ The rule is, as noted, that the trial court has control over its judgments for only thirty days, Civil Rule 75.01, and upon the lapse of that time it becomes final and the court thereafter has no power to modify or vacate it, except upon a proper direct attack. Murray v. United Zinc Smelting Corp., Mo., 263 S.W.2d 351; Bradley v. Bradley, Mo.App., 295 S.W.2d 592; State ex rel. County of Mississippi v. Stallings, Mo., 434 S.W.2d 588, 591 [4].

In City of St. Louis v. Franklin Bank, et al., 351 Mo. 688, 173 S.W.2d 837, 846 [13], this court, en banc, said: "The writ [of error coram nobis] lies only for errors of *fact*; and not by any means *every* fact that would make the judgment erroneous. If that were true there would be no need for appeals and writs of error and for statutes setting a time limit on them. The facts must be such as affect the *power and right* of the court to render the particular judgment—facts which, if known, would have *prevented* its rendition. In a sense they must be directed against what would have been either a want or abuse of jurisdiction—at least, not mere error—if the facts had been known to the court. Familiar examples are when the judgment was rendered against a decedent, an infant or insane person." See also: Norman v. Young, 301 S.W.2d 820, 823–824 [6].

■ The general rule is that without consent of the parties a consent decree will not be opened, set aside or vacated in the absence of adequate grounds, such as want of consent, fraud, collusion, or mutual mistake of fact; also, the motion to set aside must allege adequate grounds. Allen v. Fewel, et al., 337 Mo. 955, 87 S.W.2d 142; Thomas v. Craghead, 332 Mo. 211, 58 S.W.2d 281; Renken v. Sidebotham, Mo.App., 227 S.W.2d 99; Peeters v. Schultz, et al., 300 Mo. 324, 254 S.W. 182. See also 49 C.J.S. Judgments p. 600, § 330(b) and p. 603, § 330(c)(1).

■ Treating this motion as being in the nature of a petition for writ of error coram nobis, as movant requests, we find

that it will not lie, because the facts he alleges are not such as affect the power and right of the court to render or enter the decree. He does not allege want of consent by reason of mental incompetence or insanity. He alleges that he underwent electric shock therapy at some time between April and July, 1965, but this falls far short of an allegation that he was mentally incompetent, and that that condition existed at the time he signed the instrument approving the consent decree. He does not deny that his attorney's execution of the instrument approving the consent decree and the attorney's appearance in court to present the same was with his consent and approval. He admits in his brief that the signature appearing on this instrument is his. His charge of fraud is a bare conclusion unsupported by allegations of fact and therefore is insufficient. The trial court did not err in striking the motion.

The judgment is affirmed.

MORGAN, P. J., DONNELLY, J., and PRITCHARD, Special Judge, concur.